**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
―――――――――――――――――――――――――――

**MAYTINEE BIRD, ET AL.,**

                              **Plaintiffs,**          **22-cv-8049 (JGK)**

        **- against -**                      <u>**MEMORANDUM OPINION**</u>
                                        <u>**AND ORDER**</u>
**DAVID C. BANKS, ET AL.,**

                              **Defendants.**
―――――――――――――――――――――――――――

**JOHN G. KOELTL, District Judge:**

    Maytinee Bird ("the plaintiff") -- acting individually and
on behalf of H.C., a child with a disability -- brought this
action against David C. Banks and the New York City Department
of Education ("DOE," or "the district") (together, "the
defendants") pursuant to the Individuals with Disabilities
Education Act ("IDEA"), 20 U.S.C. § 1400, <u>et seq.</u>, and New York
Education Law § 4401, <u>et seq.</u> Compl. at ¶ 17, ECF No. 1. The
plaintiff filed a motion for summary judgment, ECF No. 18, and
the defendants filed a cross-motion for summary judgment, ECF
No. 20. For the following reasons, the plaintiff's motion is
**denied,** and the defendants' motion is **granted.**

                                **I.**

    Unless otherwise indicated, the following facts are taken
from the administrative record and are undisputed.[1]

―――――――――――――――――

[1] The Court waived the submission of Rule 56.1 statements in this case based
on a joint letter motion by the parties that the parties' motions would be
based solely on the administrative record and that no discovery would be
necessary in this matter. ECF No. 13.

Plaintiff Maytinee Bird is the parent of H.C. Admin. Rec. at 39-40. H.C. is a minor child who was diagnosed with cerebral palsy, seizure disorder, and a heart defect, among other conditions. Id. at 40. H.C. is a child who is non-verbal, non-ambulatory, and requires assistance in all areas of mobility, feeding, and activities of daily living. Id. As of April 22, 2022, H.C. was five years old. Id. at 40, 49.

A DOE Committee on Special Education ("CSE") convened several times in 2019 to develop an Individualized Education Program ("IEP") for H.C. for the 2019-20 school year. Id. at 110. Due to problems with adding a nurse recommendation into the IEP and subsequently locating a nurse, H.C. was not able to attend school for two months at the start of the 2019-20 school year. Once a nurse was arranged, H.C. attended ADAPT, a DOE-approved non-public special education school, from late fall 2019 until March 2020, when ADAPT closed due to the COVID-19 pandemic. Id. at 40-41. When ADAPT closed, H.C. received a "complete remote-learning experience" for the rest of the 2019-20 school year and most of the 2020-21 school year until the plaintiff unilaterally placed H.C. at the International Institute for the Brain ("iBRAIN") in April 2021. Id. at 862-63.

At iBRAIN, H.C. was enrolled in a 12-month, extended-school-day program in a 6:1:1 special education class with the following, 60-minute sessions on a weekly basis: individual

occupational therapy five times per week, individual physical therapy five times per week, individual and group music therapy three times per week, and individual and indirect assistive technology services twice per week. Id. at 111, 860. Additionally, H.C. received an assistive technology device and related supports for use throughout the day, a 1:1 paraprofessional throughout the day, and a 1:1 nurse. Id. at 860. The plaintiff also received 60-minute parent counseling and training sessions monthly to support H.C.'s education needs and promote consistency of skills from school to home. Id. at 860-61.

After H.C. was enrolled at iBRAIN, the CSE reconvened on April 21, 2021, and created an IEP with a September 1, 2021 implementation date. Id. at 112. The IEP recommended fewer services than H.C. was receiving at iBRAIN and assigned H.C. to a school in Queens that was unavailable at the start of the 2021-22 school year. Id. As a result, the plaintiff filed a Due Process Complaint ("DPC") on June 22, 2021, alleging the DOE failed to offer H.C. a Free Appropriate Public Education ("FAPE") for the 2019-20, 2020-21, and 2021-22 school years. Id.

The due process hearing was held before Impartial Hearing Officer ("IHO") Hashim Rahman on July 23, 2021. Id. In a Findings of Fact and Decision ("FOFD") dated September 5, 2021, IHO Rahman found that DOE offered H.C. a FAPE for the 2019-20

3

school year, but not the 2020-2021 and 2021-2022 school years. Id. at 166. IHO Rahman also found no lack of cooperation by the plaintiff and found that iBRAIN was an appropriate unilateral placement for H.C. Id. at 167. However, IHO Rahman declined to award the plaintiff funding for H.C.'s tuition costs because the plaintiff failed to present evidence of "limited financial means." Id. at 167-68.

The plaintiff appealed IHO Rahman's decision to the Office of State Review. Id. at 113. On November 17, 2021, State Review Officer ("SRO") Justyn P. Bates issued SRO Decision No. 21-209, "remand[ing] to the IHO to . . . issue a new determination regarding whether the district offered [H.C.] a FAPE for the portion of the 2019-20 school year prior to [H.C.'s enrolling at ADAPT] and determining what, if any, compensatory education is necessary to remediate a denial of FAPE for that portion of the 2019-20 school year[.]" Id. at 159. As for the 2020-21 school year, SRO Bates also "remanded to the IHO to . . . determin[e] . . . what, if any, compensatory education is necessary to make up for a denial of FAPE for the 2020-21 school year prior to the student's placement at iBrain" and ordered that "upon the [plaintiff's] presentation of proof of payment, the district shall be required to reimburse the parent for the costs of [H.C.'s] attendance at iBrain from April 5, 2021 through June 30, 2021[.]" Id. Finally, as for the 2021-22 school year, SRO

4

Bates ordered that "upon the [plaintiff's] presentation of proof of payment, the district shall be required to reimburse the [plaintiff] for the costs of [H.C.'s] attendance at iBrain for the 2021-22 school year[.]" Id.

IHO Rahman held status conferences on December 29, 2021, and January 25, 2022. The parties presented motions regarding evidence, but ultimately agreed to submit briefs based on the existing factual record. Id. at 22-23. During briefing, the plaintiff requested, for the first time, compensatory damages in the form of placement and prospective funding at iBRAIN for an additional school year (at the time, the 2022-23 school year). Id. at 16. IHO Rahman issued his second FOFD on March 14, 2022. Id. at 27. As for the 2019-20 school year, IHO Rahman found: "[b]ased on the [plaintiff's] claims, the supporting evidence, the lack of contradicting evidence, and the respective burdens of proof, [H.C.] was deprived of a FAPE during a period starting from September of 2019 through at least October of 2019" and the 2020-21 school year. Id. at 21, 26. Despite this, IHO Rahman found that "[a]dding compensatory education to this in the form of tuition for an additional year at the Private School would go far beyond what is needed to make [H.C.] whole under the circumstances of this case" and denied compensatory education in the form of placement and tuition at iBRAIN for the 2022-23 school year. Id. at 26-27.

The plaintiff appealed IHO Rahman's second FOFD to the
Office of State Review on April 22, 2022. Id. at 38. The
plaintiff argued that "DOE deprived H.C. of a FAPE during the
Fall of [the] 2019 [to 2020 school year]" and "during the 20/21
[school year]" and that the IHO "erred in failing to fashion an
appropriate compensatory award[.]" Id. at 47-48 On May 20, 2022,
SRO Bates dismissed the appeal in SRO Decision No. 22-045. Id.
at 19. SRO Bates concluded that the plaintiff's "requested
relief is not supported by the evidence in the hearing record
and is unwarranted" and would "constitute an improper usurpation
of the CSE's role by the due process system[.]" Id. at 18-19. In
particular, SRO Bates found that the record did not support the
plaintiff's assertions that H.C. "was not making the kind of
progress she was entitled to" and displayed a "lack of physical
progress and communication skills[] and regression due to remote
learning." Id. at 16-17. SRO Bates also found that "the evidence
on the hearing record does not support a conclusion that the
student's unilateral placement at iBrain [through the 2021-22
school year] would be insufficient to place [H.C.] in the
position she would have occupied[.]" Id. at 17. Finally, SRO
Bates worried that "award[ing] tuition reimbursement and
transportation at iBrain for the 2022-23 year would, in effect,
provide an award for the 2022-23 school year that bears no
relation to whether or no[t] the district's recommended program

6

or placement for that year is appropriate" as deemed by the district's CSE, which the IDEA charges with formulating IEPs. Id. at 18.

On September 20, 2022, the plaintiff filed this action for review of the administrative decisions. ECF No. 1. Specifically, the plaintiff seeks review of the portions of the decisions that found that the plaintiff was not entitled to compensatory educational services in the form of placement and tuition at iBRAIN for an additional school year for the denial of a FAPE for H.C. during the beginning of the 2019-20 school year and the portion of the 2020-21 school year before H.C. was enrolled at iBRAIN.

## II.

Congress enacted the IDEA to ensure that students with disabilities receive an education that adequately addresses their specific needs. See Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 (2009). Specifically, the IDEA provides that "[s]tates receiving federal funds [must] provide all children with disabilities with a FAPE,"[2] which includes "special education and related services tailored to meet the unique needs of a particular child." Mr. P v. W. Hartford Bd. of Educ., 885

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

F.3d 735, 741 (2d Cir. 2018) (citing 20 U.S.C. §§ 1401(9),
1412(a)(1)(A)).

New York's IDEA regulations closely track the IDEA statute.
See P.C. v. Rye City Sch. Dist., 232 F. Supp. 3d 394, 408
(S.D.N.Y. 2017); see also N.Y. Educ. Law §§ 4401 to 4410-b. In
New York, IEPs -- individualized education programs that outline
how a FAPE will be provided -- are formulated annually by a
local CSE, consisting of school board representatives,
educators, clinicians, and parents. N.Y. Educ. Law § 4402; see
generally Hardison v. Bd. of Educ. of the Oneonta City Sch.
Dist., 773 F.3d 372, 376 (2d Cir. 2014). In formulating IEPs,
the CSE must evaluate the student's educational status and areas
of need to determine the appropriate educational program. N.Y.
Educ. Law § 4402; R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167,
175 (2d Cir. 2012). Through the IEP, the CSE outlines the
student's goals for the upcoming school year and makes
recommendations designed to help the student achieve those goals
and make educational progress. 20 U.S.C. § 1414(d). "A school
district meets its obligations to provide a FAPE by creating an
IEP that is developed in compliance with the IDEA's procedural
and substantive requirements." N.B. v. N.Y.C. Dep't of Educ.,
711 F. App'x 29, 32 (2d Cir. 2017). It is important to note that
"[w]hat the statute guarantees is an appropriate education, not
one that provides everything that might be thought desirable by

loving parents." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 132 (2d Cir. 1998).

Should a student's parent disagree with the CSE's recommendation or "any matter relating to the identification, evaluation or educational placement of the student or the provision of a [FAPE] to the student[,]" the parent is entitled to submit a Due Process Complaint. N.Y. Educ. Law § 4404(1); see also 20 U.S.C. § 1415(b)(6)(A). DPCs are heard in the first instance at an impartial due process hearing conducted by the state or local education agency. See 20 U.S.C. § 1415(f). Then, a parent or school district may appeal an adverse decision to the appropriate state agency. See id. § 1415(g); N.Y. Educ. Law § 4404(2). Once this administrative process is exhausted, either party may file a civil action in federal or state court challenging the administrative decision. See 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3).

In federal court, summary judgment "is a pragmatic procedural mechanism for reviewing administrative decisions." T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 252 (2d Cir. 2009). In reviewing an action pursuant to 20 U.S.C. § 1415(i), the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant

9

such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); see P.C., 232 F. Supp. 3d at 406.

The court's standard of review is "a more critical appraisal of the agency determination than clear-error review but falls well short of complete de novo review." L.O. ex rel. K.T. v. N.Y.C. Dep't of Educ., 822 F.3d 95, 108 (2d Cir. 2016). While the district court independently reviews the administrative record and makes a determination based on a preponderance of the evidence, it is "expected to give due weight to [administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Walczak, 142 F.3d at 129; see also M.H. v. New York City Dep't of Educ., 685 F.3d 217, 240 (2d Cir. 2012).

### III.

#### A.

Initially, the administrative decisions in this case bear all of the hallmarks of administrative decisions that merit deference from this Court. Accordingly, the Court must afford the administrative decisions considerable weight.

A district court should defer to administrative findings where the district court's decision "is based entirely on the same evidence as that before the SRO . . . ." M.H., 685 F.3d at

244. That is certainly the case here. In reviewing an action pursuant to the IDEA, the district court "shall receive the records of the administrative proceedings [and] hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C); see P.C., 232 F. Supp. 3d at 406. In this case, the parties submitted a joint letter stipulating that "no discovery will be necessary in this matter" and that "the [p]arties' motions will be based solely on the administrative record[.]" ECF No. 12. Because the Court's decision will be based on the same evidence that was before the SRO, the Court should defer to the administrative decisions.

Additionally, a district court should defer to administrative decisions where the IHO and SRO decisions are in agreement. See C.W. ex rel. W.W. v. City Sch. Dist. of the City of N.Y., 171 F. Supp. 3d 126, 131-32 (S.D.N.Y. 2016). That is also applicable to this case. SRO Bates concluded after "having reviewed the evidence in the hearing record" that "there is no reason to disturb the IHO's finding that the [plaintiff] was not entitled to a prospective placement and prospective funding for an additional school year at iBrain." Admin Rec. at 19. Accordingly, this is another reason for the Court to defer to the administrative decisions.

Most importantly, a district "court must defer to the SRO's decision on matters requiring educational expertise unless

11

it concludes that the decision was inadequately reasoned . . . ." R.E., 694 F.3d at 189.

In this case, the SRO's decision relied on matters requiring educational expertise. The Supreme Court has instructed reviewing courts to be careful not to "substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 206 (1982). The central question in this case is whether "[H.C.] is entitled to an additional year at iBrain as compensatory educational services for the [defendants'] failure to offer [H.C.] a FAPE for portions of the 2019-20 and 2020-21 school years." Admin. Rec. at 14. Put differently, the question is whether tuition and placement for the 2022-23 school year at iBRAIN is necessary to "put [H.C.] in the same position . . . she would have been in had the denial of a FAPE not occurred[.]" Id. at 18 (citing Doe v. E. Lyme Bd. of Educ., 790 F.3d 440, 456-57 (2d Cir. 2015)). As the SRO's decision demonstrates, this question requires myriad forms of educational expertise. In formulating a decision, SRO Bates evaluated evidence on the record of H.C.'s skills and progress, see Admin. Rec. at 8-9, 12, 16-18; accommodations at ADAPT and iBRAIN, see id. at 16-17, 17 n.15; and how the plaintiff's requested remedy would interfere with the processes of the CSE, see id. at, 18-19. In

the decision, SRO Bates resolved "persistent and difficult questions of education policy" that "courts lack the specialized knowledge and experiences necessary to resolve . . . ." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., 458 U.S. at 208.

The plaintiff argues that the Court should not afford deference to the SRO's decision because it involves an issue of law. Pl.'s Opp'n & Reply at 1, ECF No. 22. It is true that "the due weight [courts] must give to the state administrative proceedings is not implicated with respect to issues of law, such as the proper interpretation of the federal statute and its requirements." Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 82 (2d Cir. 2005). However, the primary question in this case is not, as the plaintiff characterizes it, "whether prospective compensatory education is an appropriate remedy for H.C. under the IDEA[,] a question of law that involves interpreting the statute's language and the standards outlined in relevant case law." Pl.'s Opp'n & Reply at 2. Rather, the question is whether H.C. requires compensatory education to put H.C. in the same position she would have been in had the denial of a FAPE not occurred. SRO Bates answered that question in the negative, finding that a need for remedial services "is not supported by the evidence in the hearing record and is unwarranted." Admin. Rec. at 18. SRO Bates disagreed with the plaintiff's assertions that H.C. "was not making the kind of

13

progress she was entitled to" and disagreed that H.C. displayed a "lack of physical progress and communication skills[] and regression due to remote learning." Id. at 16-17. Instead, SRO Bates agreed with the defendants that "the evidence on the hearing record does not support a conclusion that the student's unilateral placement at iBrain would be insufficient to place [H.C.] in the position she would have occupied," had the district offered H.C. a FAPE for the 2019-20 and 2020-21 school years. Id. at 17; see also id. at 18 ("The parent's requested relief is not supported by the evidence in the hearing record and is unwarranted.").[3] Indeed, SRO Bates opined that granting the plaintiff's requested relief could be counterproductive and interfere with H.C.'s education. "To award tuition reimbursement and transportation at iBrain for the 2022-23 year[,]" SRO Bates decided, "would, in effect, provide an award for the 2022-23 school year that bears no relation to whether or no[t] the district's recommended program or placement for that year is appropriate" as deemed by the CSE, which was likely already conferring on the issue. Id. at 18.[4] Accordingly, the question that was before SRO Bates -- and is now before this Court -- is

---

[3] Accordingly, the plaintiff mischaracterized the SRO decision by arguing that "[t]he issue before this Court is not related to H.C.'s needs or her progress[.]" Pl.'s Opp'n & Reply at 3, ECF No. 22. That is precisely what H.C.'s case is about.

[4] Thus, the plaintiff's assertion that "how the CSE is tasked with reviewing information about a student's progress and assessing a student's needs . . . has nothing to do with the issue at hand[,]" id., is also incorrect.

a question requiring educational expertise, rather than a question of law or statutory interpretation.

Having found that the SRO's decision involved matters requiring educational expertise, the Court now turns to the second question of whether the SRO's decision was well-reasoned. An SRO decision is well-reasoned if it "conduct[s] a thorough review of the entire record . . . and clearly explain[s] the bases for [the] conclusions." M.W. ex rel. A.W. v. Bd. of Educ. of Enlarged City Sch. Dist. of Middletown, N.Y., No. 12-cv-1476, 2013 WL 2631068, at *23 (S.D.N.Y. June 12, 2013), aff'd sub nom. Ward ex rel. A.W. v. Bd. of Educ. of Enlarged City Sch. Dist. of Middletown, N.Y., 568 F. App'x 18 (2d Cir. 2014). The SRO decision in this case was clearly well-reasoned. It conducted a thorough review of the record, as evidenced by SRO Bates's citations to the record for H.C.'s skills and progress, see Admin. Rec. at 8-9, 12, 16-18; accommodations at ADAPT and iBRAIN, see id. at 16-17, 17 n. 15; and how the plaintiff's requested remedy would interfere with the processes of the CSE, see id. at, 18-19. Indeed, the SRO's decision was explicitly based upon a finding that the need for compensatory education "is not supported by the evidence in the hearing record and is unwarranted." Id. at 18. The SRO's decision also clearly explains the bases for its conclusions: SRO Bates explained that the record did not suggest that H.C. displayed a "lack of

physical progress and communication skills[] and regression due to remote learning[,]" or "that [H.C.'s] unilateral placement at iBrain would be insufficient to place [H.C.] in the position she would have occupied[.]" Id. at 17. In fact, SRO Bates found that ordering compensatory education might conflict with the CSE's recommendations for the 2022-23 school year, which the CSE was likely in the process of formulating and had the expertise and authority to create. Id. at 18. There is no indication that the SRO's decision "failed to carefully consider significant evidence; . . . failed to address obvious weaknesses and gaps in the evidence; . . . mischaracterized the testimony of . . . witnesses; [or] . . . made . . . impermissible credibility assessment[s]" or was otherwise inadequately reasoned. Scott ex rel. C.S. v. New York City Dep't of Educ., 6 F. Supp. 3d 424, 441 (S.D.N.Y. 2014).

The plaintiff contends that the SRO's decision was not well-reasoned because its "analysis . . . was merely a single page[,]" and because the SRO did not support the decision with case law from this District. Pl.'s Opp'n & Reply at 1. When challenging the decision of an SRO, the plaintiff bears the burden of demonstrating that the decision was insufficiently reasoned or supported. See M.H., 685 F.3d at 225 n.3. The plaintiff in this case has not met that burden. As to the plaintiff's argument that the SRO's decision was only a single

page, there is no minimum required page length for a well-reasoned decision. Moreover, the plaintiff's argument is misleading. The discussion section of the SRO's decision spans five, single-spaced pages, see Admin Rec. 15-19, and the decision relies on detailed descriptions of the facts and procedural history of this case as well as the legal standard, which the SRO discusses. The same is true for the plaintiff's argument that the SRO does not cite to precedent in this District. The SRO's decision does, in fact, contain a citation to a case from this district, see id. at 13 n.9, as well as citations to cases from this Circuit. Furthermore, while it might have been instructive, as the plaintiff argues, to cite cases if there was "caselaw from this Circuit that contradicts [the SRO's] approach." Pl.'s Opp'n & Reply at 6 (citing VW v. New York City Dep't of Educ., No. 21-cv-6317, 2022 WL 3448096, at *6 (S.D.N.Y. Aug. 17, 2022)), the plaintiff does not point to any caselaw from this Circuit that contradicts the SRO's approach. Accordingly, the SRO's decision was well-reasoned.

In summary, the decisions by the SRO and the IHO are in agreement, and the SRO's decision involved matters requiring educational expertise and was well-reasoned. As a result, the Court will defer to the administrative decisions on the issue of whether H.C. is entitled to an additional year at iBRAIN as compensatory educational services for the defendants' failure to

17

provide a FAPE for portions of the 2019-20 and 2020-21 school years -- in other words, allegedly to put H.C. in the same position she would have been in had she not been denied a FAPE. There is no evidence in the record to suggest that H.C. lost progress due to the denial of a FAPE, so as to warrant compensatory educational services. See Admin Rec. at 16-17. Moreover, there is no evidence in the record that H.C.'s placement at iBRAIN for the 2021-22 school year and a portion of the 2020-21 school year -- with which she was indisputably provided -- was insufficient to put H.C. where she would have been but for the denial of a FAPE during portions of the 2019-20 and 2020-21 school years. See id. at 17. Finally, as the SRO found, the CSE's role under the IDEA to formulate IEPs and its expertise as to H.C.'s individualized needs counsels against ordering placement at iBRAIN without information as to whether such placement will continue to benefit H.C. See id. at 18.

**B.**

Moreover, reviewing the SRO's decision for compliance with the IDEA -- as the plaintiff urges the Court to do -- demonstrates that the remedy that the plaintiff seeks cannot be awarded as "compensatory education" under the IDEA.

"[C]ompensatory education is an available option under the [IDEA] to make up for denial of a free and appropriate public education." P. ex rel. Mr. & Mrs. P. v. Newington Bd. of Ed.,

546 F.3d 111, 123 (2d Cir. 2008). "Compensatory education is prospective equitable relief, requiring a school district to fund . . . a remedy for any earlier deprivations in the child's education." Somoza v. N.Y.C. Dep't of Educ., 538 F.3d 106, 109 n.2 (2d Cir. 2008). Because it "aims to make up for educational services the child should have received in the first place[,]" Doe v. E. Lyme Bd. of Educ., 962 F.3d 649, 659 (2d Cir. 2020), compensatory education "must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied . . . ." Doe v. E. Lyme Bd. of Educ., 790 F.3d at 457.

The plaintiff's requested remedy -- that H.C. receive a full year of tuition at iBRAIN -- cannot be awarded as compensatory education pursuant to the IDEA. Compensatory education must take the form of equitable relief, rather than damages. See Somoza, 538 F.3d at 109 n.2. Indeed, the Court of Appeals for the Second Circuit has explicitly found, in line with the prevailing opinion of the other Circuits, "that monetary damages are not available under the IDEA." Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 486 (2d Cir. 2002). "The purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy -- as contrasted with reimbursement of expenses -- is fundamentally inconsistent with this goal." Id. Moreover,

"[t]he availability of damages . . . would undercut the IDEA's carefully structured procedure for administrative remedies, a mechanism that encourages parents to seek relief at the time that a deficiency occurs and that allows the educational system to bring its expertise to bear in correcting its own mistakes." Id.

The plaintiff's requested remedy of a year of tuition at iBRAIN is, essentially, a request for monetary damages. See Pl.'s Opp'n & Reply at 7 ("[T]he relief Plaintiff seeks in this case . . . is a year of prospective services to directly compensate for the amount of time H.C. was denied a FAPE by DOE and was not enrolled in private school."). In other words, the plaintiff is seeking reimbursement for the loss of H.C.'s time at school during the 2019-20 and 2020-21 school years by providing H.C. with payments to cover prospective tuition at iBRAIN. Cf. VW, 2022 WL 3448096, at *7.[5] That is a request for damages untethered to compensatory educational services to bring the child up to the level the child should have obtained had a FAPE been provided. See Polera, 288 F.3d at 483. Had the plaintiff sought specific compensatory services to bring H.C. up

---

[5] The plaintiff misconstrues the findings in VW v. New York City Dep't of Educ., No. 21-cv-6317, 2022 WL 3448096 (S.D.N.Y. Aug. 17, 2022). The VW court held that compensatory education in the form of "home-based ABA services" -- in addition to reimbursement for tuition -- was not a "remedy that circumvents the statutory process requiring a CSE to periodically review a student's needs." Id. at *6.

to the level that she would have been in had she received a FAPE during the entire 2019-20 and 2020-21 school years, that request should have been considered and assessed, but there was no such request. Rather than making that showing, the parent simply requested an additional year of tuition at iBRAIN. Accordingly, the IDEA does now allow for the form of relief the plaintiff is seeking in this case, which is essentially a claim for monetary damages.[6]

---

[6] The events that have transpired after the administrative record was complete in this case further support the view that the relief that the plaintiff seeks is damages. After commencing this action, the plaintiff has filed administrative due process complaints alleging failure to provide H.C. a FAPE for both the 2022-23 and 2023-24 school years. See Joint Letter at 2-3, ECF No. 29. As to the 2022-23 school year, an Impartial Hearing Officer found that the DOE denied H.C. a FAPE, that the plaintiff's unilateral placement at iBRAIN was appropriate, and the equities favored the plaintiff's claims. See id. at 2. As a result, the DOE has paid the costs for H.C.'s tuition and related services at iBRAIN for the 2022-23 school year, although there remains a dispute as to the amount owed for transportation costs. See id. at 2-3. As to the 2023-24 school year, the plaintiff appealed the Impartial Hearing Officer's finding -- that the plaintiff failed to establish that the unilateral placement of her daughter at iBRAIN was appropriate -- and the case is ongoing. See id. at 3. In the meantime, the DOE has paid for tuition and related services at iBRAIN through the end of the 2023 calendar year pursuant to pendency. See id. Accordingly, an award for the plaintiff in this action would not be placement and tuition at iBRAIN for the 2022-23 school year, as contemplated in the administrative record, but rather tuition and placement for another school year. Such an award would be contrary to the IDEA's statutory scheme of (1) allowing experts who know a child best to design an educational plan that is tailored to the child's ever-changing needs and (2) -- in the event of a failure -- providing targeted compensatory education services to bring a child up to the level the child would have achieved with a FAPE. Such an award cannot be characterized as anything other than monetary damages.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the plaintiff's motion for summary judgment is **denied**, and the defendants' cross motion for summary judgment is **granted**. The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

Dated:      New York, New York
            November 29, 2023

                                              John G. Koeltl
                                    United States District Judge

22